Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6153 | **DATE** | 8/31/2001 |
| **CASE TITLE** | Tabatha Dresden, et al vs. Treasure Island, LLC, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss for lack of personal jurisdiction (Docs. 4-1, 12-1) is granted. In light of this decision, the motions to transfer pursuant to 28 U.S.C. § 1391 and the motion to transfer for forums non conveniens (Docs. 5, 11) are denied as moot. This case is dismissed without prejudice to prompt refiling in Wisconsin.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | SEP 0 4 2001 | | 35 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 8/31/01 | | |
| | | | | date mailed notice | | |
| ETV | courtroom deputy's initials | | 01 AUG 31 PM 4: 14 | ETV | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TABATHA DRESDEN, Individually and )
as Mother and next best friend of )
SHAWN WOOD, and JOHN DRESDEN, )
Sr., Individually, and as Administrator )
of the Estate of JOHN DRESDEN, Jr. )
(a minor), Deceased, )
        )
        Plaintiffs, )
        )
vs.         )   No. 00 C 6153
        )
TREASURE ISLAND, LLC. d/b/a )  Judge Rebecca R. Pallmeyer
TREASURE ISLAND WATERPARK )
RESORT; individually and as )
employer, master and principal of )
JENNIFER MARIE GOLE and )
FAMILYLAND INCORPORATED d/b/a )
FAMILY LAND WATER PARK )
and BAY OF DREAMS INDOOR )
WATER PARK; individually and as )
employer, master and principal of )
JENNIFER MARIE GOLE, )
        )
        Defendants. )

DOCKETED
SEP 0 4 2001.

## MEMORANDUM OPINION AND ORDER

On October 12, 1999, four-year-old John Dresden, Jr. drowned in a swimming pool at the Bay of Dreams Indoor Waterpark in Wisconsin. Dresden's family, all Illinois citizens, filed this wrongful death action against the owners of the waterpark, Wisconsin corporations Treasure Island, LLC, and Familyland Incorporated, individually and as master and principal of Jennifer Marie Gole, the lifeguard on duty at the time of the drowning. Now before the court is Defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, alternatively, its motion to

transfer for forum non conveniens. Because the court agrees that Defendants' advertising activity in Illinois is not a sufficient basis to exercise personal jurisdiction over them, Defendants' motion to dismiss for lack of personal jurisdiction is granted.

## **FACTUAL BACKGROUND**[1]

Defendants operate an indoor and outdoor recreational facility for families and children. (Compl. ¶¶ 22, 23 of Allegations Common to all Counts.) Both Defendants are Wisconsin corporations with their principal place of business in Wisconsin, (*id.* ¶¶ 2, 7, 8) and both Defendants own, operate, control and manage the Bay of Dreams Indoor Water Park ("Bay of Dreams"), the site of the accident. (*Id.* ¶¶ 17, 18.)

For purposes of this motion, the facts concerning the accident are not in dispute. Plaintiffs allege that on October 12, 1999, four-year-old John Dresden, Jr. was a patron of Familyland and Treasure Island. (*Id.* ¶ 3.) Sometime around 12:15 p.m., he was at the Bay of Dreams in the Lily pad/ basketball pool. (*Id.* ¶¶ 4,8.) At that time, Jennifer Marie Gole, the lifeguard on duty at the pool, left her guard post and stepped outside the pool area, where she was unable to observe, supervise, or safeguard the pool. (*Id.* ¶¶ 6, 7.) John Dresden, Jr. became submerged in the pool for a period of time and drowned. (*Id.* ¶¶ 8, 9.)

---

[1] To determine relevant jurisdictional facts, the court may rely on "affidavits, exhibits, and other evidentiary material from either party." *Sumpter v. American Tobacco Co.*, IP 98-0401-C-M/S, 2000 U.S. Dist. LEXIS 14208, at *29 (S.D. Ind. May 4, 2000) (citing *Nelson by Carson v. Park Indus. Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983), *cert. denied*, 465 U.S. 1024 (1983)). In this case, the court relied on the parties' affidavits, answers to interrogatories, letters, responses to production requests, phone records, and examples of advertisements.

The facts needed to determine whether or not personal jurisdiction may be asserted over Defendants are contested. Plaintiffs assert that Defendants advertise and solicit business in Illinois with print advertisements and television commercials. (*Id.* ¶¶ 31, 32; Plaintiffs' Response to the Defendants' Combined Motion to Dismiss Pursuant to Rule 12(b) and Their Supporting Memorandum (hereinafter "Pls.' 12(b) Resp.") ¶¶ 7d, 7e.) Plaintiffs also contend that Familyland has placed brochures at locations in Illinois on Interstate 90 since at least 1995.[2] (Ex. D and E, Reply in Support of Defendants' Treasure Island and Familyland Motion and Supporting Memorandum to Dismiss Pursuant to Rule 12(b) (hereinafter "Defs.' Reply"); *Rus* Interrogatory/Answer, Ex. E to Pls.' 12(b) Resp. at 11.) Familyland also runs a two page ad in the Wisconsin Dells Travel and Attraction Guide which is published by the Wisconsin Dells Visitor and Convention Bureau. (*Rus* Interrogatory/Answer, Ex. E to Pls.' 12(b) Resp. at 11.) In addition, Plaintiffs contend that the Defendants "directly solicit business," in Illinois by sending brochures to prospective visitors who live in Illinois. (Pls.' 12(b) Response ¶ 7c.)

Plaintiffs point out that this advertising is effective in bringing Illinois residents to the parks; in 1999, 34.16% of Defendants' guests were from Illinois. (Plaintiffs' Response to the Defendants' Combined Motion to Dismiss Pursuant to Rule 12(b) and

---

[2]    This information comes from Defendants' response to a discovery request in another case, *Rus v. Familyland*, No. 96 C 8483 (N.D. Ill. transfer ordered June 17, 1997). This case was transferred from the Northern District of Illinois to the Western District of Wisconsin, on an uncontested motion by the defendant. (Ex. D to Defs.' Reply.) The facts of *Rus* are not clear from the record provided.

Their Supporting Memorandum ("Pls.' 12(b) Resp.") ¶ 2.)[3] Indeed, Plaintiffs John Dresden, Sr. and Tabatha Dresden, each submitted affidavits in which they assert that they were motivated to visit the Bay of Dreams in part by Defendants' advertising material. (John Dresden, Sr. Aff. ¶ 4 and Tabatha Dresden Aff. ¶ 4, Ex. M to Pls.' 12(b) Resp.)

Plaintiffs also point out that Defendants have used the Internet to promote their resort in Illinois. (Pls.' 12(b) Resp. ¶ 7f.) The record includes a copy of an e-mail solicitation from newsletter@adlit.com to e-lawyer@usa.net on March 16, 2001 for the Wisconsin Dells; the link leads to www.dells.com and www.wistravel.com for coupons.[4] (Ex. I to Pls.' 12(b) Resp.) From www.wistravel.com, there is a link to the Defendants' website. *Id.* Discount coupons for Familyland and Treasure Island are also available on www.wistravel.com. (*Id.*)

Finally, Plaintiffs contend that telephone records reflect Defendants' contact with Illinois. (Pls.' 12(b) Resp. ¶¶ 7g, 7h.) These records show that between September 16 and October 15, 1999, Defendants made approximately 270 calls into Illinois and received approximately 1,961 calls from Illinois. (Ex. J and K to Pls.' 12(b) Resp.; see also Pls.' 12(b) Resp. ¶¶ 7g.)

---

[3]     Plaintiffs were able to deduce this information by analyzing Treasure Island's computer records of registered guests, provided by Defendants in discovery. Plaintiffs originally identified this as a 1991 statistic, but later corrected this typographical error.

[4]     The location of the computer on which it was received cannot be determined from the record. (*Id.*)

Defendants assert, however, that they do not directly and/or independently solicit business in Illinois through advertising. (*See* Affidavit of Noel E. Mattei, President of Familyland (hereinafter "N. Mattei Aff.") ¶ 19, Exhibit C to Pls.' 12(b) Resp.; Affidavit of James R. Mattei, Managing Member of Treasure Island (hereinafter "J. Mattei Aff.") ¶ 18, ex. D to Pls.' 12(b) Resp.) As Defendants explain, they belong to the Wisconsin Dell Visitors and Convention Bureau ("WDV & CB"). (Ex. H to Pls.' 12(b) Resp., March 7, 2001 Letter from Defendants' attorney, Robert J. Meyer.) Treasure Island and Familyland pay a flat fee to the WDV & CB, and the WDV & CB then determines places and venues for the advertisements. (*Id.*) In addition, an advertising agency which represents both WDV & CB and the State of Wisconsin arranges for placement of advertisements in various newspapers, some of which are circulated in Illinois. (*Id.*) These advertisements do not appear as individual ads for Treasure Island, Familyland, or the Bay of Dreams; instead, print ads for Treasure Island appear under a banner which has a general title such as "Wisconsin." (*Id.*)[5] Thus, although advertisements for Treasure Island or Familyland may appear in newspapers circulated in Illinois, the ads do not appear as "stand-alone" promotions, but are grouped with advertisements for other Wisconsin resorts. Defendants have no control over where the WDV & CB will run those group advertisements. (*Id.*)

---

[5] In fact, Familyland does not purchase any advertisements in any of the Illinois newspapers; its logo appears in Treasure Island's summer banner advertisement, however. (*Id.*)

Similarly, Defendants did not themselves place brochures in Illinois. Monte Mattei, general manager of Familyland, explains in an affidavit that through their membership with the Wisconsin Dells Visitor & Convention Bureau ("WDV&CB") the Defendants contracted with an advertising agency, Ad-lit, Inc. ("Ad-lit"). (Monte Mattei Aff. ¶¶ 6-10, Ex. F. to Defs.' Reply.) Ad-lit made decisions concerning the placement of Defendants' brochures. (*Id.* ¶ 7.) Plaintiffs note that Defendants produced disks containing lists of addresses, some of which are in Illinois, to which Defendants sent brochures. In a February 27, 2001 letter, however, Defendants' attorney explained that the disks he had provided were in fact records of prospective customers who had contacted the WDV&CB either by e-mail or phone, and were then referred to the Defendants. (Ex. F to Pls.' 12(b) Resp.)

Defendants note, further, that Plaintiffs merely allege that Defendants' advertisements were one of the reasons they went to Familyland and Treasure Island. Plaintiffs have not attached or even described any advertisements or brochures they may have seen, nor do they explain whether they themselves requested such information from other organizations, such as the WDV & CB or from Defendants. There is no indication that the Dresdens received such material unsolicited. (Defs.' Reply, at 8.)

Finally, with respect to the phone records of calls to and from Illinois, Defendants note that Plaintiffs' analysis provides only raw numerical data, not any specifics concerning the nature of or reason for the calls to or from Illinois. Defendants suggest that these phone calls into Illinois might have been placed in response to

prospective visitor questions (Defs.' Reply, at 6-7), and the court itself notes that calls from Defendants into Illinois account for less than 9% of the total calls between Wisconsin and Illinois.[6]

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants move to dismiss for lack of personal jurisdiction. Defendants also claim that venue in the United States District Court for the Northern District is improper pursuant to 28 U.S.C. § 1391. Alternatively, Defendants seek to transfer the case to a more convenient forum pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the motion to dismiss is granted and the motions to transfer are denied as moot.

### A.    Standard of Review

A federal district court sitting in diversity has personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (quoting *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995), *cert. denied*, 518 U.S. 1004 (1996)). Thus, this court may hear this case only if an Illinois state court would assert personal jurisdiction over Defendants. When personal jurisdiction is questioned by the defendant, the plaintiff bears the burden of proving its existence. *Id.* at 1276. Any factual disputes are

---

[6]    Defendants also criticize Plaintiffs' presentation of the one statistic regarding 1999 patronage (Defs.' Reply, at 1-2), but Plaintiffs contend that in response to discovery Defendants furnished guest registration statistics for only this single year. (Pls.' Leave to Correct ¶ 4.) Defendants were of course at liberty to supplement the record with additional statistical information from other years if it existed.

resolved in favor of the plaintiff. *Liberty Mut. Fire Ins. Co. v. Reimer Express Enters., Ltd.*, 82 F. Supp 2d. 887, 890 (N.D. Ill. 2000). In addressing this motion, the court explores Illinois statutory law, state constitutional law, and federal constitutional law. *RAR*, 107 F.3d at 1276.

## B.     The Illinois Long-arm Statute

Under the Illinois long-arm statute, 735 ILCS 5/2-209(a), personal jurisdiction exists if any of the enumerated provisions apply to the current action. That statute states, in relevant part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this State; . . . .

*Id.* Plaintiffs argue that Defendants' actions may be described as "transacting business" within Illinois and thus the long-arm statute applies and personal jurisdiction is satisfied. *See* 735 ILCS 5/2-209(a)(1). Plaintiffs also suggest that Defendants are subject to jurisdiction under the "doing business" standard set forth in the statute. *See* 735 ILCS 5/2-209(b)(4) ("A court may exercise jurisdiction in any action arising within or without this State against any person who . . . . [i]s a natural person or corporation doing business within this State.") Finally, Plaintiffs invoke the "catch-all" provision of the statute, which states that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution

and the Constitution of the United States." 735 ILCS 5/2-209(c). The court considers these arguments in turn.

## 1. Transacting Business

In determining whether a non-resident's contacts with this state amount to the "transaction of business within this State," Illinois courts consider the following factors: (1) who initiated the transaction; (2) where the contract was entered into; and (3) where the performance of the contract was to take place. *Kadala v. Cunard Lines, Ltd.*, 226 Ill App. 3d 302, 308, 589 N.E.2d 802, 807 (1st Dist. 1992). In making this determination, only the acts of the defendant can be considered. *Id.*

Plaintiffs allege that Defendants engage in direct activities in Illinois to "lure residents and citizens of the State of Illinois to their establishment." (Pl.'s 12(b) Resp. ¶¶ 2-7.) These activities include Defendants' advertisements and brochures in Illinois, the phone calls Defendants have made to Illinois, the fact that Defendants are linked to a Wisconsin Dells newsletter sent out over the Internet, and the fact that Defendants derive significant revenue, perhaps as much as 34.16% in 1999, from Illinois residents. Finally, Plaintiffs assert that because Defendants' advertisement lured them to the park, this action arises out of Defendants' activity in Illinois. Even resolving factual disputes in their favor, however, the court concludes that Plaintiffs have not established that Defendants were "transacting business" in Illinois.

First, there is no evidence that the Defendants have ever directly advertised in Illinois. As explained in their supplemental discovery responses, Defendants' marketing process involves payment of a flat fee to WDV&CB in Wisconsin. The

WDV&CB then places banner ads[7] promoting the State of Wisconsin or the WDV&CB in the medium of its choice. (Ex. C at 1 and 4 of Defs.' Reply.) Treasure Island and Familyland have no control over the locations in which advertisements are placed. *Id.* at 1. Nor do Defendants mail unsolicited brochures directly to Illinois; instead, they send brochures to residents of Illinois only after those potential customers have requested information through the WDV&CB in Wisconsin. Neither the phone records nor the Internet newsletter constitute "transacting business" evidence; the nature of the calls is impossible to determine, and the Wisconsin Dells newsletter is another example of indirect advertising.

Plaintiffs' assertion that they visited Defendants' park based in part upon the advertising does not alter the analysis. Plaintiffs do not identify the advertising they saw; given the facts, it is entirely possible that Plaintiffs themselves solicited such information in Wisconsin. Even assuming they had viewed unsolicited ads in Illinois, however, this indirect advertising was only one reason Plaintiffs traveled to the park. Thus, Defendants cannot be said to have "initiated this transaction" as required for this court to find that Defendants "transacted business" in Illinois. Plaintiffs traveled to Wisconsin and purchased a ticket to the park in Wisconsin, where the injury occurred.

---

[7]    In this instance, a banner ad is an advertisement consisting of a banner across the top of the page and then many smaller advertisements beneath the inclusive banner.

Illinois courts which have considered circumstances such as these have concluded that defendants were not transacting business in Illinois sufficient to subject them to suit in this state. For example, in *Kadala v. Cunard Lines, Ltd.*, 226 Ill. App. 3d 302, 304, 589 N.E.2d 802, 803 (1st Dist. 1992), plaintiff was injured while using a whirlpool on the defendant's cruise ship. The defendant was not registered to do business in Illinois, but did solicit business from Illinois residents. *Id.* at 304-305, 589 N.E.2d at 804. Specifically, plaintiff provided evidence that defendant spent hundreds of thousands of dollars per year in advertising in Illinois and derived millions of dollars in revenue from Illinois residents as a result. *Id.* at 305, 589 N.E.2d at 804. Defendant also had a sales representative working in multiple states including Illinois, whose job it was to distribute materials and other information about defendant's cruises to travel agents. *Id.*

The Illinois court found these facts inadequate to confer jurisdiction. *Id.* at 310, 589 N.E.2d at 807. The court reasoned that, despite defendant's advertising and revenue, plaintiff contacted defendant to initiate the contract for the trip, that contract was entered into outside of Illinois, and the injury took place outside of Illinois. *Id.* at 309-310, 589 N.E.2d at 807. The court further explained that "advertising and revenue alone would not be a sufficient basis for the exercise of long-arm jurisdiction" and pointed out that holding otherwise would "destroy the distinction between the transaction of business in Illinois and the transaction of business with an Illinois [resident]." *Id.* at 310, 589 N.E.2d at 807 (citing *Gordon v. Tow*, 148 Ill. App. 3d 275, 283, 498 N.E.2d 718, 723 (1st Dist. 1986)) (quoting *Wessel Co. v. Yoffee & Beitman*

*Mgmt. Corp.*, 457 F. Supp. 939, 941 (N.D. Ill. 1978)). The court also rejected plaintiff's argument that defendant was "doing business" in the state of Illinois because advertising and soliciting in a state is "insufficient to subject a defendant to jurisdiction under the 'doing business' test." *Id.* at 313, 589 N.E.2d at 809.

Similarly, in *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 521, 695 N.E.2d 518, 520 (1st Dist. 1998), Illinois residents who were injured while on vacation at a lodge in Costa Rica brought suit against the resort, its operator, and Frontiers, the Pennsylvania travel agency that arranged the vacation. Plaintiff alleged that he found out about the lodge when he attended a trade show in Chicago and spoke to a lodge employee who suggested that plaintiff arrange the trip through Frontiers. *Id.* at 522, 695 N.E.2d at 520. The court concluded that defendants were not "transacting business" in Illinois, nor could they be said to be "doing business" merely by participating in the trade show. *Id.* at 228, 695 N.E.2d at 524.

In this case, Defendants were not transacting business in Illinois merely by indirectly advertising in the state and attracting revenue from Illinois residents. Indeed, the argument in favor of the exercise of jurisdiction was stronger in *Kadala*, where defendants were not only soliciting business through advertising, but also employed someone in Illinois to solicit business. The argument was also stronger in *Stein,* where employees actually came to Illinois to advertise the lodge. The courts nevertheless found these factors insufficient as a basis for the exercise of personal jurisdiction under the long-arm statute. The court concludes here, for similar reasons,

that Plaintiffs have not met their burden of showing that Defendants were transacting business in Illinois.

## 2. Doing Business

Although Plaintiffs claim they are arguing only the "transacting business" standard under the long-arm statute, they at times confuse that statutory standard with the alternate "doing business" basis of jurisdiction. *See* 735 ILCS 5/2-209(b)(4). As Illinois courts have explained:

> The distinction between the 'present and doing business theory' and the 'transaction of business theory, is that under the former a corporation that engages in a continuous and systematic course of business in the State becomes subject to the State's jurisdiction even though the subject lawsuit may have no relationship to the business that the corporation does within the State. Under the latter theory, if the corporation transacts any business within the State and a cause of action arises from that transaction then the State has jurisdiction.

*Kadala*, 226 Ill. App. 3d at 314, 589 N.E.2d at 809-810 (citing *Finnegan v. Les Pourvoiries Fortier, Inc.*, 205 Ill. App. 3d 17, 26, 562 N.E.2d 989, 994 (1st Dist. 1990)). For jurisdictional purposes, a corporation is "doing business" in Illinois when the corporation operates in the forum state, "not occasionally or casually, but with a fair measure of permanence and continuity." *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 313, 489 N.E.2d 1360, 1365 (1986).

As noted earlier, Defendants indirectly advertised in Illinois. Even more significant advertisements in Illinois would not confer jurisdiction under the "doing business" standard, which, the courts have explained, is "a high standard and requires more than mere solicitation." *Kadala*, 226 Ill. App. 3d at 314, 589 N.E.2d at 810; *see*

*also Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 333, 378 N.E.2d 88, 94 (1977). Defendants did not have significant contacts in Illinois; the phone calls are inconclusive and the Internet newsletter only indirectly provided information about the parks. *See also Trost v. Bauer*, No. 01 C 2038, 2001 WL 845477, at *11 (N.D. Ill. July 24, 2001) (it is well-settled that an Internet advertisement alone is not sufficient to subject a party to jurisdiction in another state where that website "does little more than make information available to those who are interested in it.") Without more, Defendants cannot be said to be "doing business" in Illinois. *See, e.g., Cunico v. Carlson Co., Inc.*, No. 91 C 20363, 1993 WL 169744, at *3 (N.D. Ill. 1993)(advertising a Virginia hotel in the *Chicago Tribune* is not equivalent to "doing business" in Illinois); *Rodosta v. Devil's Head Ski Lodge*, 172 Ill. App. 3d 289, 295-96, 526 N.E.2d 561, 565-66 (1st Dist. 1988)(advertising, maintaining an Illinois telephone number, selling lift tickets through a Chicago business, contracting for placement of sign advertisements, and maintaining a booth at the annual Chicago ski show did not constitute "doing business"); *Braasch v. Vail Assocs., Inc.*, 370 F. Supp. 809, 812-13 (N.D. Ill. 1973)(maintaining a booth at a ski show in Illinois, mailing promotional literature into Illinois, providing information to Illinois travel agencies and airlines, and advertising in Chicago newspapers did not constitute "doing business").

### 3.    "Catch-All" Provision/ Due Process Constraints

Even where personal jurisdiction does not exist through the enumerated provisions of the long-arm statute, a "catch-all" provision permits the court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution

and the Constitution of the United States." 735 ILCS 5/2-209(c). The court thus examines whether personal jurisdiction exists on any other basis permitted by Illinois constitutional law.

The due process guarantee contained in the Illinois Constitution constrains jurisdiction, allowing its exercise "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990). The Illinois due process guarantee is independent of the federal due process protection, and the Illinois Supreme Court reserves the right to interpret that guarantee, but in construing due process under Illinois law, the federal construction of due process can be a guiding force. *Id.* In fact, as the Seventh Circuit points out in *RAR*, "the Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." 107 F.3d at 1276. In the absence of substantial case law, this court may rely on the interpretations of the federal due process clause to determine whether or not a non-resident defendant is subject to personal jurisdiction. *Mors v. Williams*, 791 F. Supp 739, 743 (N.D. Ill. 1992).

In order to decide whether the court may, consistent with Federal due process, exercise personal jurisdiction over Defendants, the court must answer two questions. First, the court must determine whether the non-resident defendant has established minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 474 (1985). Second, the court considers whether subjecting the defendant to appear in court in the forum state would offend "traditional notions of fair play and substantial justice." *RAR*, 107 F.3d at 1277 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

To establish minimum contacts, a defendant must engage in some purposeful action directed toward the forum state more than simply "placing [a] product into the stream of commerce." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 111 (1987). Even if such purposeful availment is found, this court would then need to consider whether asserting jurisdiction over Defendants would be consistent with "fair play and substantial justice." In considering this issue, courts must look at: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive policies." *Burger King*, 471 U.S. at 476 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Defendants here insist that they had no minimum contacts with Illinois, nor did they "purposefully avail" themselves of the privilege of conducting activities within this state. (Defs.' 12(b) Motion at 7.) Plaintiffs respond by accusing Defendants of denying their contact with Illinois through direct solicitation of Illinois residents. (Pls.' 12(b) Resp. at 11.) As the court noted earlier, however, Plaintiffs have offered no evidence that Defendants have engaged in any direct advertising or that they took "purposeful"

action to derive benefit in this state. (Pls.' 12(b) Resp. at 12 (quoting *Burger King*, 472 U.S. at 473.)) Defendants arguably did place their "product" (i.e. their names) into the stream of commerce by contracting with the WDV&CB to promote their activities, but they did not directly advertise in Illinois. Even with the knowledge that the WDV & CB advertisements may appear in Illinois, however, without an additional connection between Defendants and the forum state, the standard for minimum contacts is not satisfied. *Asahi*, 480 U.S. at 112.

In a case similar to the one at hand, *Pilipauskas v. Yakel*, 258 Ill. App. 3d 47, 52, 629 N.E.2d 733, 737 (1st Dist. 1994), the Illinois Appellate Court found that jurisdiction was not proper under federal constitutional law. In *Pilipauskas*, plaintiffs brought an action against Michigan lodge owners as a result of injuries they claimed they suffered due to carbon monoxide exposure in the lodge, also located in Michigan. *Id.* at 49, 629 N.E.2d at 735. The lodge owners did not directly advertise in Illinois, but, instead, belonged to a number of marketing associations, some of which occasionally distributed their brochures at sports shows, including one in Chicago. *Id.* at 50, 629 N.E.2d at 736. The lodge owners sent brochures to individuals whose names were furnished by the associations, as well as to persons who had stayed at the lodge in the past or had written to the owners about accommodations within the previous two years. *Id.* at 51, 629 N.E.2d 736. In addition, defendants made about 100 calls to Illinois each year, but claimed that many of these calls were probably made by their children to friends in Illinois. *Id.* at 50, 629 N.E.2d at 735-36. Finally, in 1989 and

1990, 46% and 40%, respectively, of the lodge's guests were from Illinois. *Id.* at 50, 629 N.E.2d at 735.

Despite these connections to Illinois, the Illinois Appellate Court reversed the trial court's finding that jurisdiction was proper in this case. *Id.* at 52, 629 N.E.2d 737. After first determining that the plaintiffs had not sufficiently proved jurisdiction on the basis of either transaction of business within Illinois or doing business in Illinois, the court then decided that jurisdiction was also not proper under federal due process standards. *Id.* at 54-55, 629 N.E.2d at 738-39. As the court explained, defendants were members of five tourist marketing associations, but those marketing associations were all located in Michigan, with either toll-free or Michigan phone numbers. *Id.* at 57, 629 N.E.2d at 740. Additionally, the court pointed out that there was no evidence that any Illinois residents contacted the lodge as a result of the marketing associations attending any sport shows in Chicago. *Id.* Nor did the court find the phone calls persuasive where there was no evidence that those calls were made for the purpose of soliciting business. *Id.* at 57, 629 N.E.2d at 741. Finally, the court was not moved by the evidence that nearly 50% of the defendants' guests were Illinois residents, and thus Illinois had twice as many guests as any other state including Michigan. It observed: "No case has yet held that revenue derived from this State is the dispositive variable in resolving whether *in personam* jurisdiction may be asserted against a foreign corporation." *Id.* at 58, 629 N.E.2d 741, n.3.

The *Pilipauskas* court determined that it would not be fair to require the defendants to litigate this case in Illinois. As the court explained, it was "extremely

18

doubtful" that the number of defendants' telephone calls, the number of Illinois guests, or the fact that defendants sent a newsletter or brochure to individuals who expressed an interest in the lodge would give the defendants "fair warning that they would be sued in Illinois." *Id.* at 58, 629 N.E.2d at 196. The court noted further that the cause of action has "no relationship to Illinois except that the plaintiffs came from Chicago." *Id.* Finally, the court pointed out, "plaintiffs chose to initiate a contact with nonresident defendants and chose to travel to Michigan where they intended to spend some time vacationing." *Id.* Under these circumstances, the court found it was unreasonable to expect the lodge owners from Michigan to defend this action in Illinois. *Id.*

This case presents the same concerns. Plaintiffs traveled to Wisconsin and bought their tickets to the waterpark in Wisconsin. Tragically, their son was injured there. As with the *Pilipauskas* defendants, Defendants' main activity in Illinois is performed through Wisconsin associations that place some ads in Illinois. Defendants also made phone calls and sent brochures in response to inquiries from interested parties. *Pilipauskas* supports the conclusion that it would be unfair for this court to subject Treasure Island and Familyland to the personal jurisdiction of this court when they have had minimal activity with the state. *See also Hall's Specialties, Inc. v. Schupbach*, 758 F.2d 214, 216-17 (7th Cir. 1985)(where Illinois defendant did not knowingly cause his ad to appear in Indiana, jurisdiction was not proper because defendant did not "purposely avail himself of the privilege of doing business in Indiana . . . .").

19

The court recognizes that traveling from Wisconsin to Illinois to appear before this court would not inflict a large burden on the Defendants and that Plaintiffs' residence in Illinois renders this court a convenient forum. Illinois does have an interest in the death of one of its citizens and seeking justice for his family. Nevertheless, the fact that the accident itself occurred in Wisconsin and that most of the witnesses reside there, militates in favor of Wisconsin as the fairest location for this litigation.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction (Docs. No. 4-1, 12-1) is granted. In light of this decision, the motions to transfer pursuant to 28 U.S.C. § 1391 and the motion to transfer for forums non conveniens (Docs. No. 5, 11) are denied as moot. This case is dismissed without prejudice to prompt refiling in Wisconsin.

ENTER:

Dated: August 31, 2001

REBECCA R. PALLMEYER
United States District Judge